IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN GALVAN and PATRICK TAYLOR, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br> v.<br><br>STEVEN T. MNUCHIN, in his official capacity as United States Secretary of the Treasury; the UNITED STATES DEPARTMENT OF THE TREASURY; CHARLES P. RETTIG, in his official capacity as United States Commissioner of Internal Revenue; the INTERNAL REVENUE SERVICE; and the UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No. 1:20-cv-4511<br><br>Judge Joan B. Gottschall<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

   In the midst of the largest pandemic in a century, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which in relevant part directs the United States Department of the Treasury to provide refundable tax credits to every eligible individual as fast as possible.

   The CARES Act unambiguously explains who shall receive the payments, and it makes no exceptions for people who are incarcerated. Nonetheless, in the face of clear statutory text that mandates payments to all eligible individuals, Defendants are denying payments to eligible individuals who are incarcerated, including Plaintiffs John Galvan and Patrick Taylor.

   In short, Defendants are ignoring the unambiguous commands of the CARES Act. The Administrative Procedure Act ("APA") provides a mechanism for individuals to challenge this type of unlawful behavior by the Executive branch of the federal government, and so Plaintiffs brought

this lawsuit seeking redress under the APA on behalf of themselves and others similarly situated. There can be no reasonable dispute about the merits of this case. Defendants are willfully ignoring the law, and Plaintiffs and the putative Class are entitled to partial summary judgment on their APA claims. As described in more detail below, the Court should issue a declaratory judgment that otherwise eligible individuals do not become ineligible merely because they are incarcerated. The Court should further order Defendants to comply with the CARES Act by providing eligible incarcerated individuals with the required payments.

## FACTUAL BACKGROUND

### I. The CARES Act sets out a clear statutory scheme for payment of tax credits.

In March 2020, Congress passed the CARES Act to combat the steep economic downturn caused by the COVID-19 Pandemic. *See* Local Rule 56.1 Statement of Facts ("SOF") ¶ 1. The CARES Act created a 2020 tax credit to be disbursed "as rapidly as possible" in the form of a direct payment or "advance refund" of $1,200 to "eligible individuals." SOF ¶ 2. The IRS refers to the advance refund as an "Economic Impact Payment" or a stimulus payment, and Plaintiffs will do the same. *See id.*

Under the CARES Act, nearly everyone in the United States qualifies as an "eligible individual." SOF ¶ 3. Indeed, the Act excludes only four categories of individuals: (1) those without a social security number; (2) nonresident aliens; (3) dependents claimed on the tax return of another taxpayer; and (4) estates or trusts. *Id.* (citing 28 U.S.C. § 6428(d), (g)). The Economic Impact Payment phases out if the individual's adjusted gross income in 2019 exceeds $75,000 for single individuals, $112,500 for heads of household, or $150,000 for married individuals filing jointly. *Id.* ¶ 4 (citing 26 U.S.C. § 6428(c)). There are no other statutory eligibility requirements for payment. *See id.* ¶ 5 (citing 26 U.S.C. § 6428). The Act does not give the Treasury Department or anyone else discretion to decide who is and who is not eligible for payment. *See id.* ¶ 6 (citing 26 U.S.C. § 6428).

**II. The IRS began issuing Economic Impact Payments in accordance with the law, but then abruptly stopped paying incarcerated individuals and demanded the return of previous payments.**

On April 10, 2020, the IRS began directly issuing Economic Impact Payments to individuals for whom it had relevant contact and eligibility information, including incarcerated individuals. SOF ¶ 7.[1]

Shortly thereafter, the Treasury Department's Inspector General for Tax Administration ("Inspector General") expressed concern to the IRS that incarcerated individuals were receiving CARES Act funds. SOF ¶ 8. The IRS responded, correctly, that incarcerated people fit within the CARES Act definition of "eligible individuals," and are thus entitled to receive the payments. *Id.* Later, however, the IRS changed its position and decided to bar eligible individuals from receiving Economic Impact Payments if those individuals were incarcerated. *Id.*

On May 6, 2020, the IRS published its policy change by adding Q&A Number 15 (now 14) to the FAQ portion of its website, which states that incarcerated people are not entitled to receive the Economic Impact Payment and should return the money if they have already received it. SOF ¶ 9. Specifically, the policy states that "[a] person is incarcerated if he or she is described in one or more of clauses (i)through (v) of Section 202(x)(1)(A) of the Social Security Act (42 U.S.C.

---

[1] The IRS was able to directly pay individuals who filed tax returns in 2019 or 2018. SOF ¶ 15. Because not all eligible individuals filed such returns, the IRS also created an online Non-Filers Tool so that eligible individuals could register their name, address, social security number, direct deposit information, driver's license or state identification information, or identity protection personal identification number, as well as providing similar information for qualifying children. *See* SOF ¶ 16 (citing I.R.S, Non-Filers: Enter Payment Info Here.) The IRS has indicated that individuals who did not file income-tax returns for 2018 or 2019, and who did not have a 2019-return filing requirement (as defined in 26 U.S.C. § 6012(f)), may obtain an Economic Impact Payment by registering through the Non-Filers Tool by October 15, 2020. SOF ¶ 17 (citing I.R.S. News Release, IR-2020-111 (June 3, 2020)). This likely includes many members of the proposed Class, as only those with adjusted gross income exceeding $12,200 needed to file a tax return in 2019. SOF ¶ 17. Few individuals who were incarcerated in 2019 would have made that much money. For example, inmate-workers at federal prisons earn no more than $1.15 per hour. SOF ¶ 18. Assuming a year-round 40-hour workweek, a federal prisoner would make at most $2,392. *See id.*

§ 402(x)(1)(A)(i) through (v))." SOF ¶ 10. In turn, 42 U.S.C. § 402(x)(1)(A) denies Social Security benefit payments to individuals "for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual—(i) is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense."[2] SOF ¶ 11. The above-described policy represents Defendants' final decision regarding payments to incarcerated individuals. *See* SOF ¶ 14.

In addition, once the Treasury and IRS Defendants decided they would no longer comply with the terms of the CARES Act, they set about actively blocking incarcerated people from receiving their Economic Impact Payments. Specifically, Defendants asked prison and jail officials across the country to intercept Economic Impact Payment checks that had already been mailed to incarcerated people, and to return those checks to the IRS. SOF ¶ 12.

Finally, Defendants provided the Bureau of the Fiscal Service—an agency within the Department of the Treasury that manages the federal government's central payments, collections, and deposit systems—with Taxpayer Identification Numbers associated with incarcerated people and requested that Bureau of Fiscal Service remove these numbers from the payment files. SOF ¶ 13. Thus, incarcerated people will be excluded as the IRS continues making the Economic Impact Payments. *See id.*

### III. Plaintiffs are incarcerated individuals who are entitled to Economic Impact Payments and have not received those payments.

Plaintiff John Galvan is currently incarcerated, and he provided the IRS with the information necessary to receive an Economic Impact Payment. SOF ¶¶ 19-21. For tax year 2019, Mr. Galvin was an eligible individual under the CARES Act, as he is a United States citizen, was not a

---

[2] Subsections (ii) through (v) deny payments for those who were convicted by reason of insanity; those who are civilly commmitted for certain sexual offenses; those fleeing custody; and those who are violating a condition of probation or parole. 42 U.S.C. § 402(x)(1)(A)(ii)–(v). SOF ¶ 11.

dependent of another taxpayer, and has a work-eligible Social Security Number, as well as income below $75,000. SOF ¶ 20. Mr. Galvan has not received the Economic Impact Payment in spite of his timely application. SOF ¶ 21. Plaintiff Patrick Taylor is also incarcerated and is also eligible for an Economic Impact Payment. SOF ¶¶ 22-24. He also provided the IRS with all the necessary information to receive an Economic Impact Payment but has not received an Economic Impact Payment. SOF ¶ 24.

### IV. Plaintiffs have sought class certification and seek partial summary judgment on behalf of themselves and the putative class.

Defendants' actions affect a large group of similarly situated individuals, which makes class certification appropriate. Plaintiffs have therefore separately moved for certification of the following class:

> Every person in the United States who is eligible under 26 U.S.C. § 6428 to receive an Economic Impact Payment[3] (or other credit, refund, or payment under this section), and who: (a) is or has been barred from receiving such benefit by Defendants on the ground that the individual is incarcerated; or (b) at any time on or after March 27, 2020, meets the criteria described in IRS FAQ 14[4] or Section 202(x)(1)(A)(i)-(v) of the Social Security Act.[5]

Plaintiffs seek partial summary judgment on behalf of themselves and the putative Class.

---

[3] 26 U.S.C. § 6428, subsection (f), provides for an "advance refund" to be disbursed as "rapidly as possible." The IRS refers to this advance refund as an "Economic Impact Payment" or "stimulus payment." SOF ¶ 2 (citing https://www.irs.gov/coronavirus/economic-impact-payments).

[4] IRS, *Economic Impact Information Center*, "EIP Eligibility and General Information," FAQ, Question: "Does someone who is incarcerated qualify for the Payment?" The FAQ number has changed from Q.12 in early May 2020 to Q.15 at the time the Complaint in this case was filed on July 31, 2020, to Q.14 as of the date of this filing. *See* SOF ¶¶ 9, 10 (citing https://www.irs.gov/coronavirus/economic-impact-payment-information-center).

[5] This provision of the Social Security Act, 42 U.S. Code § 402 (Old-age and survivors insurance benefit payments), subsection (x)(1)(A)(i)-(v), refers to an individual who "is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense," is confined for other specified reasons at public expense, is fleeing, or is violating probation or parole. SOF ¶ 11.

**LEGAL STANDARD**

Summary judgment "is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Although Rule 56 applies to motions for summary judgment in APA cases, courts treat such motions differently in APA cases than motions for summary judgment in other cases. *See J.N. Moser Trucking, Inc. v. United States Dep't of Labor*, 306 F. Supp. 2d 774, 781 (N.D. Ill. 2004). In particular, the D.C. Circuit has "repeatedly recognized…when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal [and] the 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

Moreover, district courts typically may consider only the administrative record when deciding such motions. *See Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009). Where, as here, a party challenges a broadly applicable agency policy, the relevant record includes the agency's public statements regarding the policy at issue. *See*, *e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (U.S. 2020) (in APA case, considering Department of Homeland Security's public explanation for its decision to rescind immigration-related program); *see also Cook County, Illinois v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020) (considering publicly-announced administrative rule in APA challenge).

Finally, "[t]he APA provides the standard of review that the Court must apply when reviewing an agency's actions." *Great Am. Ins. Co. v. United States*, 55 F. Supp. 3d 1053, 1058 (N.D. Ill. 2014). The relevant standards of review under the APA for this case are discussed in Sections II and III below.

**ARGUMENT**

The CARES Act directs the Treasury to provide Economic Impact Payments to all eligible individuals as rapidly as possible, and it makes no exceptions for incarcerated individuals. The APA

provides a mechanism for individuals to enforce their rights to CARES Act payments. Specifically, the APA directs that "the reviewing court *shall* . . . (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1), (2) (emphasis added).

Relevant to this motion, on behalf of themselves and all others similarly situated, Plaintiffs seek an order declaring that:

  a. People who are incarcerated, or who fit the criteria described in IRS FAQ 14 or Section 202(x)(1)(A)(i)–(v) of the Social Security Act, qualify for Economic Impact Payments, credits, refunds, or other payments pursuant to the CARES Act, 26 U.S.C. § 6428, if they meet the eligibility requirements set forth in the statute.

  b. Defendants violated the APA, 5 U.S.C. § 706(1) by failing to make Economic Impact Payments to incarcerated people in violation of the CARES Act; and

  c. Defendants violated the APA, 5 U.S.C. § 706(2), by establishing an IRS policy that denies Economic Impact Payments to incarcerated people and publicizing that policy on its website, in violation of the CARES Act.

Plaintiffs also seek an injunctive relief requiring Defendants to:

  a. Issue Economic Impact Payments as rapidly as possible to Class Members who are entitled to Payments based on Defendants' records because:

     i. the individual filed a federal income tax return for 2018 or 2019;

     ii. information with respect to such individual for calendar year 2019 is available in Form SSA-1099, Social Security Benefit Statement;

     iii. information with respect to such individual for calendar year 2019 is available in Form RRB-1099, Social Security Equivalent Benefit Statements; or

     iv. the individual is otherwise entitled to receive an Economic Impact Payment automatically based on the IRS's records and practice in implementing the CARES Act, but for the person's incarcerated status.

  b. Issue Economic Impact Payments as rapidly as possible to Class Members who entered payment information using the IRS Non-Filer tool; and

      c. Stop considering incarcerated status in any determinations about eligibility for Economic Impact Payments, credits, refunds, or other payments pursuant to the CARES Act, 26 U.S.C § 6428, for individuals who file income tax returns, use the Non-Filer Tool, or are otherwise eligible for such Economic Impact Payments, credits, refunds, or other payments.

Because there are no disputes of material fact and because Defendants' actions violate the CARES Act, the Court should grant summary judgment on Plaintiffs' APA claims seeking declaratory and injunctive relief.

### I.      The APA provides the Court with the authority to decide this case.

"The APA establishes a basic presumption of judicial review [for] one suffering legal wrong because of agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (internal quotation omitted). Nonetheless, Plaintiffs expect Defendants to argue that the Court cannot resolve this dispute because the federal government has not waived its defense of sovereign immunity. That is not a viable defense.[6]

Section 702 of the APA "waives sovereign immunity for actions 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" *Mittelstadt v. Perdue*, 913 F.3d 626, 632 (7th Cir. 2019) (quoting 5 U.S.C. § 702). In cases such as this one, where plaintiffs ask a court to force the Executive branch of the federal government to carry out the law, the APA provides a waiver of sovereign immunity even if carrying out the law requires defendants to pay money to the plaintiffs. Put differently:

> For purposes of § 702, the Supreme Court has held that the mere "fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Instead, the critical question is whether the plaintiff seeks substitute or specific relief. Whereas "[d]amages are given to the

---

[6] Sovereign immunity is an affirmative defense. *See Bush v. United States*, 939 F.3d 839, 844 (7th Cir. 2019) (Easterbrook, J.) (sovereign immunity is a waivable defense and "does not affect subject-matter jurisdiction") (citation omitted).

8

> plaintiff to substitute for a suffered loss," specific remedies "attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895, 108 S.Ct. 2722 (*quoting Maryland Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985).

*Id.*

*Mittelstadt* is instructive on this issue. The plaintiff in *Mittelstadt* alleged that the United States Department of Agriculture breached certain contracts with him when the department declined to re-enroll him in a program through which he had previously obtained benefits. Although the plaintiff sought money as a result of the breach of contract, the Seventh Circuit held that it had jurisdiction to decide his claim because he sought an order requiring the Department to re-enroll him in the program at issue. *See id.* That Mr. Mittelstadt would have received money had such an order been issued was beside the point, "because Mr. Mittelstadt sought payments not as compensation for [the Secretary's] failure to perform some other obligation, but as the very thing to which he was entitled" under the relevant law. *Id.* (internal quotation omitted); *see also Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988) ("[S]ince the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity."); *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 896 (7th Cir. 2013) ("The Hospital wants money, but not as compensation for FEMA's failure to perform some other obligation. Instead the Hospital, like the state in *Bowen,* wants money as the very thing to which [it] was entitled under the disaster-relief program." (internal quotation marks omitted)).

Here, Plaintiffs seek an order directing the Treasury to provide them and Class Members with their Economic Impact Payments, the very thing to which they are entitled under the CARES Act. They do not seek money "as compensation for [Defendants'] failure to perform some other obligation." *Columbus Reg'l Hosp.*, 708 F.3d at 896. Thus, Section 702 of the APA provides a waiver

of sovereign immunity, and the defense does not apply here. Moreover, Defendants have indicated that their decision to not provide Economic Impact Payments to incarcerated individuals is a final decision. SOF ¶ 14. Therefore, the decision is reviewable by this Court. 5 U.S.C. § 704.

### II. Defendants have unlawfully withheld and unreasonably delayed Economic Impact Payments to incarcerated individuals.

The APA provides that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Thus, Courts must compel agency action under Section 706(1) "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (holding that district court does not have discretion to deny an injunction to compel action under § 706(a) because "[t]hrough § 706 Congress has stated unequivocally that courts must compel agency action unlawfully withheld or unreasonably delayed"). In analyzing an agency's position for purposes of an APA claim, "[t]he overriding question is whether the agency's interpretation of the relevant statute is one the text will permit." *Cook County, Illinois v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020).

The statutory text of the CARES Act leaves no room for dispute: eligible individuals are entitled to Economic Impact Payments. Section 2201(a) of the CARES Act, codified at 26 U.S.C § 6428(f), requires the Treasury Secretary to issue $1,200 Economic Impact Payments to eligible individuals, as defined in 26 U.S.C. § 6428(c), (d), and (g), "as rapidly as possible."[7] And Plaintiffs are "eligible individuals" within the meaning of § 6428. SOF ¶¶ 19-24. Among other things, their adjusted gross income is less than $75,000—the threshold specified in subsection (c), and they do not fit within any of the excluded categories specified in subsection (d) or (g). *See id.* Moreover,

---

[7] The CARES Act provides an additional $500 per qualifying child of the eligible individual. 26 U.S.C. § 6428(a)(2). It provides $2,400 for eligible individuals who were married and filed a joint tax return. *Id.* § 6428(a)(1).

nothing in the Act even suggests that "eligible individuals" under the statute become ineligible merely because they are incarcerated. Defendants' contrary interpretation violates the law.

The Defendants' position that incarcerated individuals cannot be "eligible individuals" under the CARES Act is not even close to an interpretation of the Act that "the text will permit." *See Wolf*, 962 F.3d at 221. That is the end of the inquiry, and summary judgment for Plaintiffs is warranted. *See id.* (explaining that if statutory text is unambiguous, "then that is the end of it: the agency and courts alike are bound by what Congress wrote").

In short, Defendants violated 26 U.S.C § 6428(f) and 5 U.S.C. § 706(1) when they failed to make Economic Impact Payments to incarcerated people, including Plaintiffs. By categorically refusing to provide Economic Impact Payments to incarcerated individuals, Defendants have "unlawfully withheld" those payments, and by not making those payments "as rapidly as possible," Defendants have "unreasonably delayed" action that Congress compelled in 26 U.S.C § 6428(f).

The Court should issue (1) a declaratory judgment that the CARES Act does not exclude incarcerated individuals who are otherwise "eligible individuals" as defined by the Act; and (2) an injunction compelling Defendants to provide those payments "as rapidly as possible." *See Norton*, 542 U.S. at 64 (agency may be compelled to act when it has refused to comply with law); *see also Rivera v. Mueller*, 596 F. Supp. 2d 1163, 1170 (N.D. Ill. 2009) (ordering FBI to conduct DNA search when FBI manuals clearly dictated that such a search should be conducted).

**III. Defendants violated the CARES Act by barring payments to otherwise eligible incarcerated individuals, falsely publicizing that incarcerated individuals were not entitled to payments, and demanding the return of payments that were already made.**

Defendants acted unlawfully by (1) barring incarcerated persons from receiving Economic Impact Payments to incarcerated individuals, (2) incorrectly stating on the IRS website that incarcerated persons are ineligible for the payments, and (3) taking affirmative steps to revoke

payments that were previously made to incarcerated individuals. The Court should declare those actions illegal and set them aside pursuant to Section 706(2) of the APA.

Section 706(2) of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). The court must satisfy itself that the agency examined the relevant evidence, articulated a satisfactory explanation for its action, and that there is a rational connection between the evidence and the action. *Ind. Forest All., Inc. v. United States Forest Serv.*, 325 F.3d 851, 858-59 (7th Cir. 2003) (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)). Where, as here, the relevant agency announced its interpretation of the law pursuant to a "simple announcement" rather than any sort of formal rulemaking process, courts should not give deference to the agency's opinion. *See, e.g.*, *Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002). In any event, an agency's interpretation of the law is necessarily arbitrary and capricious when it completely disregards the statutory text without even trying to justify that decision, and its failure to comply with plain language of a statute necessarily exceeds its authority. *See id.*; *cf. Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007) ("An administrative decision is arbitrary and capricious if the decision conflicts with the plain language of the plan.").

As described above and in Plaintiffs' Statement of Facts, Defendants stated on the IRS website that incarcerated persons do not qualify for Economic Impact Payments and that such payments initially made to incarcerated persons should be returned. SOF ¶¶ 9-10, 12-13. Defendants further worked to intercept and retrieve payments that the IRS had properly issued to incarcerated individuals. *See id.*

Defendants acted arbitrarily and capriciously, and not in accordance with law, by establishing an IRS policy of denying payments Congress unambiguously required under 26 U.S.C § 6428, stating

12

on the IRS website that such payments were unavailable to incarcerated persons, and intercepting payments the IRS had already sent. Indeed, it is difficult to imagine a more arbitrary and capricious decision than what Defendants did here: at first complying with the law by issuing payments to incarcerated individuals and then, without explanation, taking the exact opposite position. *See Regents of the Univ. of California*, 140 S. Ct. at 1912 (concluding that reversal of policy that agency previously believed was justified, without examination of alternatives, was arbitrary and capricious).

In taking this agency action and causing the IRS and Department of Treasury to deny the payments Congress mandated under 26 U.S.C § 6428, Defendants also acted in excess of their statutory authority. No federal law prohibits the provision of Economic Impact Payments to incarcerated individuals or permits the Defendants to revoke such payments that were made before they unlawfully changed their policy. To the contrary, the CARES Act states who is eligible to receive Economic Impact Payments, and nothing in the Act excludes incarcerated individuals.

## CONCLUSION

Defendants have unquestionably violated the CARES Act and the APA by refusing to provide Economic Impact Payments to incarcerated individuals and by demanding that anyone who previously received such a payment return their money. The Court should grant Plaintiffs' motion for partial summary judgment and provide the relief requested on pages 7-8, above.[8]

DATED: August 14, 2020                    Respectfully submitted,

By: /s/ Scott Rauscher

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

---

[8] The relief requested is also set forth in paragraphs 8 and 9 of Plaintiffs' accompanying motion for partial summary judgment.

Facsimile: (206) 623-0594
steve@hbsslaw.com

Jeannie Y. Evans
Zoran Tasić
Hagens Berman Sobol Shapiro LLP
455 Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
jeannie@hbsslaw.com
zorant@hbsslaw.com

Christopher R. Pitoun (Admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Ave, Suite 920
Pasadena, CA 91101
Telephone: (213)-330-7150
Facsimile: (213)-330-7152
christopherp@hbsslaw.com

Michael Kanovitz
Scott Rauscher
Sarah Grady
Elliot Slosar
LOEVY & LOEVY
311 North Aberdeen Street, Third Floor
Chicago, IL 60607
Telephone: 312-243-5900
mike@loevy.com
scott@loevy.com
sarah@loevy.com
elliott@loevy.com

*Counsel for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that on August 14, 2020, I filed the foregoing via the Court's electronic filing system. I further certify that I will cause a true and correct copy of the foregoing to be sent by USPS first class mail at the address listed below:

Stephen T. Mnuchin, in his official capacity as U.S. Secretary of the Treasury
c/o General Counsel for the Department of Treasury
1500 Pennsylvania Ave, NW
Washington, D.C. 20220

U.S. Department of the Treasury
c/o General Counsel for the Department of Treasury
1500 Pennsylvania Ave, NW
Washington, D.C. 20220

Charles P. Rettig, in his official capacity as U.S. Commissioner of the Internal Revenue
c/o Chief Counsel of the U.S. Internal Revenue Service
1111 Constitution Ave, NW
Washington D.C. 20224

Internal Revenue Service
c/o Chief Counsel of the U.S. Internal Revenue Service
1111 Constitution Ave, NW
Washington D.C. 20224

United States of America
c/o Attorney General of the United States of America
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, D.C. 20530

-and-

United States Attorney's Office
Northern District of Illinois, Eastern Division
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604

/s/ Scott Rauscher